UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

_____

CHRISTIAN BRUCKNER and
PROJECT MANAGEMENT CORPORATION,

        Plaintiffs,                                    Case No. _____

   v.

JOSEPH R. BIDEN, JR.,
MITCHELL J. LANDRIEU, and
PETER P. BUTTIGIEG,

        Defendants.

_____

**VERIFIED COMPLAINT
CHALLENGING THE CONSTITUTIONALITY OF
THE INFRASTRUCTURE INVESTMENT AND JOBS ACT**

_____

Plaintiffs allege their complaint against Defendants as follows:

## INTRODUCTION

1. On November 15, 2021, President Biden signed into law the "Infrastructure Investment and Jobs Act," a $1.2 trillion spending bill to improve America's infrastructure. As part of this bill, Congress authorized $370 billion in new spending for roads, bridges, and other surface transportation projects. But Congress also implemented a set aside, or quota, requiring that at least 10% of these funds be reserved for certain "disadvantaged" small businesses. According to the White House, the law

reserves more than $37 billion in contracts to be awarded to "small, disadvantaged business contractors."[1]

2. As an immigrant and disabled small business owner who lives and works in an a historically underutilized community, Plaintiff Christian Bruckner should be the type of person who could benefit from this program to help disadvantaged small business owners. But he cannot. Bruckner cannot compete for these infrastructure projects because of his race and gender. Defendants' $37 billion fund is reserved for small businesses owned by certain minorities and women. Bruckner is a white male, so he is excluded.

3. "The Constitution created a government dedicated to equal justice under law." *Cooper v. Aaron*, 358 U.S. 1, 19 (1958). The Constitution forbids discrimination by the federal government "against any citizen because of his race," *Adarand Constructors, Inc. v. Pena*, 515 U.S. 200, 216 (1995) (citations omitted), as well as on account of gender, *United States v. Virginia*, 518 U.S. 515, 532 (1996).

4. The Infrastructure Act does just that: it sets an unlawful quota based on race and gender. At least 10% of all contracts for certain infrastructure projects must be awarded based on race and gender.

---

[1] https://www.whitehouse.gov/briefing-room/statements-releases/2021/11/23/fact-sheet-the-bipartisan-infrastructure-law-will-revitalize-main-street/.

5. This quota is unconstitutional. Defendants have no justification for the Act's $37 billion race-and-gender quota. This Court should therefore declare this quota unconstitutional and enjoin its enforcement, just as other courts have similarly enjoined other race-and-gender-based preferences in the American Rescue Plan Act. *E.g., Vitolo v. Guzman*, 999 F.3d 353 (6th Cir. 2021) (injunction against $28.6 billion Restaurant Revitalization Fund priority period); *Faust v. Vilsack*, 519 F. Supp. 3d 470 (E.D. Wis. 2021) (injunction against $4 billion Farmer Loan Forgiveness program).

## THE PARTIES

6. Plaintiff Christian Bruckner is a white male who lives and works in Tampa, Florida. He is an immigrant who came to America in the 1970s to escape the communist regime in Romania. His parents wanted a better life for him in a country that values constitutional rights and the principle of equality under the law. In 1989, Bruckner was seriously injured in a car wreck. He is permanently disabled. Bruckner has over 20 years of experience in government contracting and is qualified, willing, and able to be a contractor and subcontractor under the Infrastructure Act.

7. Plaintiff Project Management Corporation (PMC) is a for-profit Florida corporation owned and controlled by Plaintiff Bruckner. PMC is based in Tampa, Florida, and certified by the Small Business Administration as a small business concern that operates in a "Historically Underutilized Business

3

Zone." PMC is Cybersecurity Maturity Model compliant, Defense Logistics Agency JCP compliant, and ISO-9001 Quality Assurance compliant. PMC services contracts under dozens of codes under the North American Industry Classification System. PMC can fulfill transportation and infrastructure-related contracts, including those contracts available under the Infrastructure Act. PMC currently fulfills and bids on federal contracts.

8. Defendant Joseph R. Biden, Jr. is the President of the United States. Under the U.S. Constitution, Art. II, § 3, he must "take care that the laws be faithfully executed," including the quota in Section 11101(e)(3) of the Infrastructure Act. Defendant Biden, through one or more White House officials, is personally involved in the implementation of the Infrastructure Act, including the efforts to assist socially and economically disadvantaged individuals. He is sued in his official capacity.

9. Defendant Mitchell J. Landrieu is the White House Senior Advisor and Infrastructure Implementation Coordinator. Defendant Biden appointed Defendant Landrieu to oversee the implementation of the Infrastructure Act, including its supports for socially and economically disadvantaged individuals.[2] He is sued in his official capacity.

---

[2] https://www.whitehouse.gov/wp-content/uploads/2022/01/BUILDING-A-BETTER-AMERICA_FINAL.pdf.

10. Defendant Peter P. Buttigieg is the Secretary of Transportation. Under the Infrastructure Act and other laws, Defendant Buttigieg is required to administer portions of the law's appropriations, including the quota in Section 11101(e)(3). He is sued in his official capacity.

## JURISDICTION AND VENUE

11. This Court has jurisdiction over this complaint under 28 U.S.C. § 1331, § 2201, and 5 U.S.C. § 702, because this case presents a substantial question of federal law, specifically whether Section 11101(e)(3) of the Infrastructure Act—and Defendants' implementation of that section—violates the United States Constitution's guarantee of equal protection of the laws.

12. This Court has authority to issue a declaratory judgment and to order injunctive relief and other relief that is necessary and proper pursuant to 28 U.S.C. §§ 2201 & 2202.

13. Venue is appropriate in this district under 28 U.S.C. § 1391(e)(1). A substantial part of the events giving rise to this claim occurred in this district, a substantial part of the property subject to this action is situated in this district, and the Plaintiffs reside in this district.

## FACTUAL BACKGROUND

14. On November 15, 2021, President Biden signed into law the "Infrastructure Investment and Jobs Act," P.L. 117-58 (referred to throughout this complaint as the "Infrastructure Act").

15. Section 11101(e)(3) of the Infrastructure Act provides that "not less than 10 percent of the amounts made available for any program under this division (other than section 14004), division C, and section 403 of title 23, United States Code, shall be expended through small business concerns owned and controlled by socially and economically disadvantaged individuals." The value of this quota is approximately $37 billion.

16. According to the White House, under this quota, various divisions within the Department of Transportation (specifically, the Federal Highway Administration, Federal Transit Administration, and National Highway Traffic Safety Administration) will spend at least 10 percent of their more than $370 billion in contract authority through small, disadvantaged businesses.[3]

17. The Infrastructure Act adopts definitions from the Small Business Act, including the definitions of "small business concern" (15 U.S.C. § 632; *see* 13 C.F.R. § 121.101 *et seq.*), "socially disadvantaged" (15 U.S.C. § 637(d); *see* 13 C.F.R. § 124.103), and "economically disadvantaged" (15 U.S.C. § 637(d); *see* 13 C.F.R. § 124.104).

18. "Socially disadvantaged individuals are those who have been subjected to racial or ethnic prejudice or cultural bias within American society

---

[3] https://www.whitehouse.gov/briefing-room/statements-releases/2021/11/23/fact-sheet-the-bipartisan-infrastructure-law-will-revitalize-main-street/.

because of their identities as members of groups and without regard to their individual qualities." 13 C.F.R. § 124.03(a).

19. Federal regulations contain a presumption that only the following racial or ethnic groups are "socially disadvantaged" under federal law: "Black Americans; Hispanic Americans; Native Americans (Alaska Natives, Native Hawaiians, or enrolled members of a Federally or State recognized Indian Tribe); Asian Pacific Americans (persons with origins from Burma, Thailand, Malaysia, Indonesia, Singapore, Brunei, Japan, China (including Hong Kong), Taiwan, Laos, Cambodia (Kampuchea), Vietnam, Korea, The Philippines, U.S. Trust Territory of the Pacific Islands (Republic of Palau), Republic of the Marshall Islands, Federated States of Micronesia, the Commonwealth of the Northern Mariana Islands, Guam, Samoa, Macao, Fiji, Tonga, Kiribati, Tuvalu, or Nauru); Subcontinent Asian Americans (persons with origins from India, Pakistan, Bangladesh, Sri Lanka, Bhutan, the Maldives Islands or Nepal)." 13 C.F.R. § 124.03(b)(1).

20. "Economically disadvantaged individuals are socially disadvantaged individuals whose ability to compete in the free enterprise system has been impaired due to diminished capital and credit opportunities as compared to others in the same or similar line of business who are not socially disadvantaged." 13 C.F.R. § 124.104.

7

21. Under the Infrastructure Act, women are deemed "socially and economically disadvantaged individuals."

22. Congress attempted to justify these race-and-gender classifications through findings of "race and gender discrimination" in the Infrastructure Act, but none of these findings establish that Congress is attempting to remedy a specific and recent episode of intentional discrimination that it had a hand in.

23. Plaintiff Bruckner owns and controls Plaintiff Project Management Corporation, which is a small business concern as defined by Section 11101(e)(2) of the Infrastructure Act.

24. Plaintiff Bruckner is not defined as a "socially and economically disadvantaged individual" because he does not fit into any of the racial and ethnic categories in 13 C.F.R. § 124.03.

25. Because he is a white male, Plaintiff Bruckner and his business, PMC, cannot compete on an equal footing for contracts under the Infrastructure Act with businesses that are owned by women and certain racial minorities preferred by federal law.

26. Unless Defendants are enjoined, Plaintiffs will lose out on the ability to compete equally for all contracts available under the Infrastructure Act, specifically $37 billion in set asides for women and certain racial groups.

Moreover, Plaintiffs suffer ongoing harm to their dignity because of the Infrastructure Act's unlawful race and gender discrimination.

## CAUSE OF ACTION
## EQUAL PROTECTION VIOLATION

27. Plaintiffs reallege and incorporate by reference the allegations set forth above as if fully set forth herein.

28. The Constitution forbids "discrimination by the general government . . . against any citizen because of his race." *Gibson v. Mississippi*, 162 U.S. 565, 591 (1896).

29. Gender discrimination is also unconstitutional. Courts "carefully inspect[ ] official action that closes a door or denies opportunity to women (or to men)." *United States v. Virginia*, 518 U.S. 515, 532 (1996).

30. "The liberty protected by the Fifth Amendment's Due Process Clause contains within it the prohibition against denying to any person the equal protection of the laws." *United States v. Windsor*, 570 U.S. 744, 774 (2013).

31. "[A]ll racial classifications imposed by the government must be analyzed by a reviewing court under strict scrutiny." *Johnson v. California*, 543 U.S. 499, 505 (2005) (citation omitted). "Under strict scrutiny, the government has the burden of proving that racial classifications are narrowly

9

tailored measures that further compelling governmental interests." *Id.* (citation omitted).

32. As the court held in *Virginia*, when gender discrimination is employed, the burden "rests entirely," 518 U.S. at 533, on the government to offer an "exceedingly persuasive" justification, and to prove that the "the discriminatory means employed are substantially related to the achievement of those objectives." *Id.* at 572 (citations omitted).

33. Section 11101(e)(3) of the Infrastructure Act imposes racial and gender classifications, and grants benefits (namely, contracts under a set aside or quota) based on those racial and gender classifications.

34. Defendants are responsible for interpreting and implementing Section 11101(e)(3) of the Infrastructure Act, including the race and gender quota.

35. Plaintiffs are qualified, willing, and able to apply for contracts authorized by Section 11101 of the Infrastructure Act, but because of Plaintiff Bruckner's race and gender, Plaintiffs are ineligible to compete for contracts derived from the $37 billion quota.

36. The racial classifications under Section 11101(e)(2) & (3) of the Infrastructure Act are unconstitutional because they violate the equal protection guarantee in the United States Constitution. These racial

classifications in the Infrastructure Act are not narrowly tailored to serve a compelling government interest.

37. The gender-based classification under Sections 11101(e)(2) & (3) of the Infrastructure Act is unconstitutional because it violates the equal protection guarantee in the United States Constitution. This gender-based classification is not supported by an exceedingly persuasive objective, and the discriminatory means employed are not substantially related to the achievement of that objective.

## RELIEF REQUESTED

Plaintiffs respectfully request that this Court:

A. Enter a preliminary injunction removing all unconstitutional race and gender-based classification in Section 11101(e)(3) of the Infrastructure Act.

B. Enter a declaratory judgment that the race and gender-based classifications under Section 11101(e)(3) of the Infrastructure Act are unconstitutional.

C. Enter an order permanently enjoining Defendants from applying race and gender-based classifications when awarding contracts under Section 11101(e)(3) of the Infrastructure Act.

D. Award Plaintiffs their attorney fees under 28 U.S.C. § 2412 or other relevant laws.

E. Grant Plaintiffs such other and further relief as the court deems appropriate.

Dated: July 13, 2022

ABEL BEAN LAW, P.A.

*/s/ Daniel K. Bean*
Daniel K. Bean
Jared J. Burns
100 N. Laura Street Suite 501
Jacksonville, FL 32202
Telephone: (904) 944-4100
dbean@abelbeanlaw.com
jburns@abelbeanlaw.com

WISCONSIN INSTITUTE FOR
LAW & LIBERTY, INC.
Richard M. Esenberg (*special admission pending*)
Daniel P. Lennington (*special admission pending*)
330 East Kilbourn Avenue, Suite 725
Milwaukee, WI 53202
Telephone: (414) 727-9455
Facsimile: (414) 727-6385
Rick@will-law.org
Dan@will-law.org

*Attorneys for Plaintiffs*

## VERIFICATION

1. I am a plaintiff in this case.

2. I have personal knowledge of myself, my activities, my intentions, and my business, Project Management Corporation, which is also a plaintiff in this lawsuit, including those set out in the foregoing Verified Complaint. If called upon to testify, I would competently testify as to the matters relevant to me and my claims.

3. I verify under the penalty of perjury under the laws of the United States that the factual statements in this Verified Complaint concerning myself, my activities, my intentions, and my business are true and correct.

Dated: _____7/8/2022_____

Signature __*Christian Bruckner*__

Printed Name: Christian Bruckner