UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

_____

CHRISTIAN BRUCKNER, et al.,

            Plaintiffs,                    Case No. 8:22-CV-1582-KKM-SPF

v.

JOSEPH R. BIDEN, JR., et al.,

            Defendants.

_____

**PLAINTIFFS' RESPONSE IN OPPOSITION TO MOTION TO DISMISS**
_____

      Defendants seek to dismiss this lawsuit because Plaintiffs have not "submitted a single bid on a contract receiving funds from the Infrastructure Act." Doc. 31:9. This is no basis for a motion to dismiss. In 1993, the United States Supreme Court dispelled the notion that a federal contractor must somehow bid on a contract, and be rejected, before it can file a lawsuit challenging a racial quota. In *Northeast Florida Chapter of Associated General Contractors,* the Court wrote: "[t]he 'injury in fact' . . . is the denial of equal treatment resulting from the imposition of the barrier, not the ultimate inability to obtain the benefit." 508 U.S. 656, 666 (1993). Accordingly, "a party challenging a set-aside program . . . need only demonstrate that it is able and ready to bid on contracts and that a discriminatory policy prevents it from doing so on an equal basis." *Id*. Plaintiff Christian Bruckner alleges he is a

1

federal contractor, operating through his business, Plaintiff Project Management Corporation, and together, Plaintiffs are "qualified, willing, and able to be a contractor and subcontractor under the Infrastructure Act." Doc. 1:¶ 6; *see also id.* at ¶¶ 7, 23–25, 35. These allegations are sufficient to defeat a motion to dismiss.

Moreover, Defendants also allege that their race- and gender-based quotas meet strict scrutiny. Doc. 31:15-16. But whether strict scrutiny is satisfied is not appropriate inquiry for the motion to dismiss stage, where Plaintiffs have clearly alleged a constitutional violation and that Defendants have no justification for this discriminatory program. Doc. 1:¶¶ 28-37. And as explained above, Defendants' other arguments, such as ripeness and improper parties, are similarly unpersuasive and ought to be rejected.

The motion to dismiss should be denied.

## ARGUMENT

**I.    The Court Has Subject Matter Jurisdiction over Plaintiffs' Claim.**

**A. Plaintiffs Have Alleged an Injury in Fact.**

Injury in fact has been described as the "first and foremost" of standing's three elements. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). A plaintiff establishes an injury in fact by showing that he "suffered an invasion of a legally protected interest that is concrete and particularized and actual or

imminent, not conjectural or hypothetical." *Spokeo, Inc.,* 578 U.S. at 339 (internal quotation marks omitted; citation omitted). As the Supreme Court has recognized, "a racial classification causes 'fundamental injury' to the 'individual rights of a person.'" *Shaw v. Hunt*, 517 U.S. 899, 908 (1996) (citation omitted); *see also Smith v. Howard Univ.*, No. 21-CV-00920, 2022 WL 1658848, at *3 (D.D.C. May 25, 2022) ("if race discrimination 'is a fundamental injury to the individual rights of a person,' gender discrimination must be as well.").

In *Northeastern Florida Chapter,* an association of general contractors sued the City of Jacksonville in this Court challenging a quota "requir[ing] that 10% of the amount spent on city contracts be set aside each fiscal year for so-called 'Minority Business Enterprises.'" 508 U.S. at 658. As Defendants do here, the City claimed the contractors did not have standing because they had not demonstrated that any member "would have bid successfully for any of these contracts." *Id.* at 660. Despite the 11th Circuit's determination that there was no contractor standing, this Court got the answer correct, ruling for the contractors. Reversing the 11th Circuit, Justice Thomas, writing for the Court, explained that in an equal protection case, "[t]he 'injury in fact' . . . is the denial of equal treatment resulting from the imposition of the barrier, not the ultimate inability to obtain the benefit." *Ne. Fla. Chapter*, 508 U.S. at 666. Accordingly, "a party challenging a set-aside program . . . need only

3

demonstrate that it is able and ready to bid on contracts and that a discriminatory policy prevents it from doing so on an equal basis." *Id.*

Plaintiffs have alleged that despite being "qualified, willing, and able to be a contractor and subcontractor under the Infrastructure Act," Doc. 1:¶¶ 6-7, they are being treated differently by Defendants and denied equal access to government contracts based on race and gender. This unequal treatment flows from the Infrastructure Act's 10% race-and-gender quota in which at least $37 billion is reserved for certain small business beneficiaries, including "socially disadvantaged" women and certain specified minorities. Doc. 1:¶¶ 15, 18-19, 21. The existence of a possible yet unclear petition process for defeating the government's presumption of *not* being a "socially disadvantaged individual" requires, at a minimum, "substantial evidence" proving a complex set of factors; and accordingly, does nothing to eliminate, and in fact only further highlights, Plaintiffs' inability to compete on unequal footing for contracts under the Infrastructure Act in the first place. 13 C.F.R. § 124.103(c) & (d). Likewise, Defendants' attempt to draw distinctions between what the Infrastructure Act "authorizes" as opposed to "mandates" or "directs" does nothing to alter the Infrastructure Act's flagrant race and gender biases. Contrary to Defendants' contention, Plaintiffs need not demonstrate that they would have submitted a bid or received a single contract under the Infrastructure Act, and Plaintiffs certainly are not required to "exhaust their

4

administrative remedies and lose any appeals" after bidding and losing a contract in order to allege an injury in fact. Doc. 31:9-10. Indeed, Defendants' proposed test for injury in fact would turn equal protection jurisprudence on its head. However, this need not be the case: the "obstacle to [Plaintiff's] candidacy" in the first place is enough. *Ne. Fla. Chapter*, 508 U.S. at 665. For "[w]hen the government erects a barrier that makes it more difficult for members of one group to obtain a benefit than it is for members of another group, a member of the former group seeking to challenge the barrier need not allege that he would have obtained the benefit but for the barrier in order to establish standing." *Id.* at 666.

### B. Plaintiffs' Injury is Likely to be Redressed by a Favorable Judicial Decision.

Under the redressability requirement of standing, a plaintiff's injury in fact must be "likely to be redressed by a favorable judicial decision." *Spokeo, Inc.*, 578 U.S. at 338.

Plaintiffs are being denied equal access to compete for government contracts based on race and gender. Plaintiffs have asked the Court to issue declaratory and injunctive relief addressing the unconstitutional race- and gender-based classifications under Section 11101(e)(3) of the Infrastructure Act and Defendants' application thereof. Doc. 1:11-12. Since the injury in an equal protection case is the denial of equal treatment itself, a legal victory

5

would unquestionably redress the "fundamental injury" to the "individual rights of a person" that racial and gender classifications cause. *Ne. Fla. Chapter*, 508 U.S. at 666; *Shaw,* 517 U.S. at 908; *Smith*, 2022 WL 1658848, at *3.

Defendants' attempt to distinguish between "economically disadvantaged individuals" and "socially disadvantaged individuals" under the Infrastructure Act to undermine Plaintiffs' straightforward satisfaction of the redressability requirement is to no avail. Under federal regulations, "socially disadvantaged individuals" encompass "those who have been subjected to racial or ethnic prejudice or cultural bias within American society because of their identities as members of groups and without regard to their individual qualities." 13 C.F.R. § 124.103(a). Meanwhile, "[e]conomically disadvantaged individuals *are* socially disadvantaged individuals whose ability to compete in the free enterprise system has been impaired due to diminished capital and credit opportunities as compared to others in the same or similar line of business who are not socially disadvantaged." 13 C.F.R. § 124.104(a). (emphasis added).[1] Accordingly, for purposes of the Infrastructure Act, if an individual is not "socially disadvantaged" according to the government's preferences for certain racial or ethnic groups, he cannot be "economically

---

[1] Women are deemed "socially and economically disadvantaged individuals" under the Infrastructure Act. 49 U.S.C. § 47113(a)(2).

6

disadvantaged" either. Plaintiff Bruckner is not a "socially and economically disadvantaged individual" because he does not fit into any of the racial and ethnic categories. Doc. 1:¶ 24. Therefore, Defendants' recitation of the Infrastructure Act's requirement for the expenditure of funds "through small business concerns owned and controlled by socially *and economically disadvantaged* individuals," Doc. 31:11-13, only serves to affirm Plaintiffs' redressable injury: Plaintiffs will be unable to compete equally for all contracts available under the Infrastructure Act, specifically $37 billion in set asides for women and certain racial groups, unless the Court enjoins Defendants.

### C. Plaintiffs' Claims Are Ripe for Review.

Determining whether administrative action is ripe for judicial review involves a two-prong inquiry concerning (1) the fitness of the issues for judicial decision and (2) the hardship to the parties of withholding court consideration. *Nat'l Park Hosp. Ass'n v. Dep't of Interior*, 538 U.S. 803, 808 (2003) (citing *Abbott Lab'ys v. Gardner*, 387 U.S. 136, 149 (1967)). As Defendants' aptly note, this inquiry, in turn, considers several guiding factors: (1) whether delayed review would cause hardship to the plaintiffs; (2) whether judicial intervention would inappropriately interfere with further administrative action; and (3) whether the courts would benefit from further factual development of the issues presented. *Pittman v. Cole*, 267 F.3d 1269, 1278 (11th Cir. 2001) (citing *Ohio Forestry Ass'n, Inc. v. Sierra Club*, 523 U.S. 726, 733 (1998)).

Similar to Defendants' arguments with respect to certain elements of the standing inquiry, Defendants' arguments regarding ripeness ultimately refuse to acknowledge the nature of harm sustained by Plaintiff Bruckner and other qualified contractors like him. Defendants argue that Plaintiffs' claims are not ripe for review "because they have not alleged that they have submitted a bid to a prime contractor for a sub-contract on a project that receives funding under the Infrastructure Act." Doc. 31:14. As a result, Defendants argue, "delayed review would not cause any hardship to Plaintiffs" under the first *Pittman* factor. *Id.* However, this contention (and the connotation it carries that there is no injury) mischaracterizes equal protection cases in which the denial of equal treatment to Plaintiffs and others similarly situated is itself the injury, here incurring at a minimum, from the point of the government's consideration of individuals for contracts under the Infrastructure Act through such time as when contracts may be awarded.[2]

Moreover, in an apparent about-face, Defendants ask this Court to consider the second *Pittman* factor in a manner diametrically opposed to Defendants arguments respecting the first *Pittman* factor. Specifically, Defendants claim that Plaintiffs are not being subjected to hardship due to the

---

[2] If Plaintiff Bruckner was a woman or a non-white member of the government's preferred racial or ethnic groups, then Plaintiffs would be considered on equal footing with such other applicants. However, the government will not even consider Plaintiffs, who are otherwise qualified, in the same manner in which these other individuals are considered because of Plaintiff Bruckner's race and gender.

8

race- and gender-based classifications imposed by the Infrastructure Act, all the while acknowledging that "[u]nder the Infrastructure Act, roads and transit projects currently are being funded and built," and "[c]ontract bids are being submitted to state and local DOT-fund recipients." Doc. 31:14. However, Defendants cannot have it both ways: since the implementation of the Infrastructure Act is "currently" underway, injury and hardship to Plaintiffs and those similarly-situated is necessarily ongoing. Further, as Plaintiffs seek injunctive and declaratory relief regarding the racial and gender classifications imposed under the Infrastructure Act, this case is purely a matter of law based on undisputed facts, which weighs against Defendants on both the second and the third *Pittman* factors. No further fact-finding is of any import or has any relevant bearing on the racial and gender classifications declared and applied under the Infrastructure Act. As such, judicial intervention does not *inappropriately* interfere with further administrative action where such action is inherently unconstitutional on its face and as applied.

## II. Plaintiffs' Complaint States a Claim for Race and Gender Discrimination in Violation of the United States Constitution.

Defendants move to dismiss this case pursuant to Rule 12(6)(b). Yet even after recognizing that the determination of a motion to dismiss under this standard requires a court to "accept all factual allegations in a complaint as true and take them in the light most favorable to the plaintiff," Doc. 31:5

9

(quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)), Defendants do *not* accept Plaintiffs' allegations as true. Instead, Defendants have endeavored to defend the race- and gender-based classifications under the Infrastructure Act as an appropriate "affirmative action program". Doc. 31:15, 17. While such arguments may be appropriate at the summary judgment stage, they are not appropriate here. "The purpose of a motion to dismiss is to test the sufficiency of the complaint, not to decide the merits." *Triad Assocs., Inc. v. Chicago Hous. Authority*, 892 F.2d 583, 586 (7th Cir. 1989). *See also Quality Foods de Centro Am., S.A. v. Latin Am. Agribusiness Dev. Corp., S.A.*, 711 F.2d 989, 995 (11th Cir. 1983) ("the threshold of sufficiency that a complaint must meet to survive a motion to dismiss for failure to state a claim is exceedingly low."); *Slakman v. Admin. Comm. of Delta Air Lines, Inc.*, 660 F. App'x 878, 880–81 (11th Cir. 2016) (district court did not review motion to dismiss incorrectly by evaluating the merits of the claim rather than the sufficiency of the complaint). To survive a motion to dismiss, a plaintiff's complaint must simply contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Bey v. City of Tampa Code Enf't*, 607 F. App'x 892, 895 (11th Cir. 2015) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). In turn, "[f]or a claim to be facially plausible, the complaint must plead 'factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id.* Plaintiffs' complaint easily passes this test of

sufficiency because it properly alleges a violation of the Fifth Amendment to the United States Constitution.

Plaintiffs have alleged that they are being denied equal access to government contracts under the Infrastructure Act based on race and gender. *E.g.*, Doc. 1:¶¶ 2, 6-7, 23-26. Likewise, Plaintiffs have alleged that Defendants have not satisfied the high bar the Constitution demands in interpreting and implementing the Infrastructure Act's discriminatory race- and gender-based classifications through the demonstration of a compelling governmental interest that is narrowly tailored to achieve that interest. *E.g.*, Doc. 1:¶¶ 5, 30-33, 36-37. Plaintiffs' complaint as alleged states a claim for relief.

Defendants' attempt to highlight a few cases regarding other Circuit court rulings as to other laws relating to the Department of Transportation's Disadvantaged Business Enterprise program, Doc. 31:15-16, does nothing to disturb or in any way attenuate the sufficiency of Plaintiffs' allegations that they are being denied equal access to government contracts under the Infrastructure Act. Even if the Court were to look past the allegations in the Complaint, and then consider all of the evidence submitted by Defendants in support of its purported "affirmative action program," the program would still fail strict scrutiny for the reasons explained in Plaintiffs' briefings on the motion for preliminary injunction. *See* Doc. 14 & 17. For example, among other reasoning set forth in Plaintiffs' briefings, Plaintiffs have not only identified

11

certain flaws in Defendants' relied upon data and statistical studies used in justification of Defendants' program but also contend that Defendants have neither established a compelling interest through the identification of specific showings of intentional past discrimination in which the government had a hand, nor narrowly tailored the purported remedy. *See id*.

Accordingly, Plaintiffs state a plausible claim of discrimination in violation of the Fifth Amendment because, accepted as true, Plaintiff Bruckner has alleged that his race and gender are "barriers" to competing for contracts under the Infrastructure Act, *see Ne. Fla. Chapter*, 508 U.S. at 666, and that the government's interpretation and implementation of this discriminatory program do not pass constitutional muster. *See* Doc. 1:¶¶ 23-25, 27-37; Doc. 14 & 17. These allegations are sufficient to meet the "exceedingly low" threshold required to defeat a motion to dismiss. *Quality Foods de Centro Am., S.A.*, 711 F.2d at 995.

## III. The Existing Parties Are Properly Named in This Lawsuit.

### A. There Is No Failure to Name an Indispensable Party.

Determining the proper joinder of parties requires a court to first ascertain under the standards of Rule 19(a) whether the person in question is one who should be joined if feasible. *Challenge Homes, Inc. v. Greater Naples Care Ctr., Inc.*, 669 F.2d 667, 669 (11th Cir. 1982). In determining whether the party in question "should be joined," "pragmatic concerns, especially the effect

12

on the parties and the litigation control." *Focus on the Fam. v. Pinellas Suncoast Transit Auth.*, 344 F.3d 1263, 1280 (11th Cir. 2003) (citing *Challenge Homes, Inc.*, 669 F.2d 667, 669 (11th Cir.1982)). Included in this consideration is whether the court can accord complete relief among existing parties and whether the absence of the party in question will impair the absent party from protecting its interest relating to the subject of the action, or leave an existing party subject to a substantial risk of incurring multiple or inconsistent obligations. *Id.* Fed.R.Civ.P. 19(a)(1).

Here, Defendants argue that the absence of a "state or local agency that receives [funding under the Infrastructure Act]" is "fatal" to Plaintiffs' equal protection claim because state and local agencies that receive Infrastructure Act funding must administer their own programs for disadvantaged small businesses in accordance with federal law.[3] Doc. 31:23. The federal Infrastructure Act sets eligibility for a disadvantaged small business according to racial and gender-based classifications, which state and local agency fund recipients must in turn abide by in administering their programs. However, in this case, Plaintiffs challenge and seek relief from federal law and Defendants interpretations and implementations thereof. State or local action may often be taken independent of federal law; Plaintiffs do not challenge this

---

[3] *See generally* 49 C.F.R. pt. 26 regarding Participation by Disadvantaged Business Enterprises in Department of Transportation Financial Assistance Programs.

13

characteristic of federalism here. Rather, since Plaintiffs' challenges squarely concern federal Defendants' violations of the United States Constitution, this case concerns only the existing parties; no state or local agency recipient of funds under the Infrastructure Act is either implicated or appropriate for disposing this action. *See Jeffries v. Georgia Residential Fin. Auth.*, 678 F.2d 919, 928-29 (11th Cir. 1982) (district court correctly concluded against a joinder where plaintiffs did not challenge the propriety of absent landlord owners' actions or conduct); *see also Fla. Panthers v. Collier Cnty., Fla.*, No. 213CV612FTM29DNF, 2016 WL 1394328, at *16 (M.D. Fla. Apr. 8, 2016) ("Plaintiffs do not seek any relief from the State of Florida or the [Fish and Wildlife Service] . . . this portion of the motion to dismiss is denied."); *but cf. Boles v. Greeneville Housing Authority,* 468 F.2d 476, 478-80 (6th Cir. 1972) (an agency is a necessary party when legality of its actions is at issue). To the extent this Court grants the requested declaratory and injunctive relief addressing the unconstitutional race- and gender-based classifications under Section 11101(e)(3) of the Infrastructure Act, and prohibits Defendants from imposing the discriminatory provisions outlined in federal law, Plaintiffs would receive complete relief.

### B. President Biden and Mitchell Landrieu Are Proper Parties in This Lawsuit.

Defendants ask this court to dismiss President Biden and Mitchell Landrieu in their official capacities as defendants in this case. While Defendants recognize that "an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity," Doc. 31:25 (quoting *Kentucky v. Graham*, 473 U.S. 159, 166 (1985)), they offer no reasoning or justification as to why this Court should consider removing the named defendants and substituting the United States. The fact that this is Defendants' *preference* provides a flimsy basis indeed when Plaintiffs have named President Biden and Mitchell Landrieu, in their official capacities, because of these actors' personal involvement in the implementation of the Infrastructure Act. Doc. 1:¶¶ 8-9. There is no need to correct something that does not require fixing, particularly where Plaintiffs have alleged their basis for including the at issue defendants in their official capacities in the first place. The Supreme Court has repeatedly considered and ruled on suits against the President and White House officials. *See, e.g., Biden v. Texas,* 142 S.Ct. 2528 (2022); *Biden v. Missouri*, 142 S.Ct. 647 (2022). And this Court has certainly entertained lawsuits against the President and White House officials without concern for their status as parties. *See, e.g., Florida v. Nelson*, 8:21cv2524, Doc. 40 (M.D. Fla. Dec. 30, 2021) (enjoined officials include

15

President and officials of the Office of Management and Budget, which is part of the White House).

## CONCLUSION

Defendants' motion to dismiss should be denied.

Dated: October 18, 2022

> WISCONSIN INSTITUTE FOR
> LAW & LIBERTY, INC.
> /s/ *Daniel P. Lennington*
> Richard M. Esenberg (*admitted pro hac vice*)
> Daniel P. Lennington (*admitted pro hac vice*)
> Katherine D. Spitz (*admitted pro hac vice*)
> 330 East Kilbourn Avenue, Suite 725
> Milwaukee, WI 53202
> Telephone: (414) 727-9455
> Facsimile: (414) 727-6385
> Rick@will-law.org
> Dan@will-law.org
> Kate@will-law.org
>
> ABEL BEAN LAW P.A.
> Daniel K. Bean
> Jared J. Burns
> 100 N. Laura Street, Suite 501
> Jacksonville, FL 32202
> Telephone: (904) 944-4100
> dbean@abelbeanlaw.com
> jburns@abelbeanlaw.com
>
> *Attorneys for Plaintiffs*

## **CERTIFICATE OF SERVICE**

I certify that, on October 18, 2022, I electronically filed a copy of the foregoing document with the Clerk of Court via CM/ECF, which will send a notice of electronic filing to all counsel of record.

                                                  /s/ *Daniel P. Lennington*