UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | |
|---|---|
| **CHRISTIAN BRUCKNER**, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>**JOSEPH R. BIDEN, JR.**, *et al.*,<br><br>Defendants. | Case No. 8:22-cv-1582-KKM-SPF |

**DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFFS' COMPLAINT**

Defendants reply in support of their Motion to Dismiss Plaintiffs' Complaint, ECF No. 31 (Motion), and to respond to Plaintiffs' Response in Opposition to Motion to Dismiss, ECF No. 36 (Opposition). Nothing in Plaintiffs' cited authorities or speculative assertions alters the core premise of Defendants' Motion. First, Plaintiffs fundamentally mischaracterize the contracting goals in the Infrastructure Investment and Jobs Act, Pub. L. 117–58, 135 Stat. 429 (Nov. 15, 2021) (the Infrastructure Act); the Act requires the continuation of the U.S. Department of Transportation's Disadvantaged Business Enterprise program (the DOT DBE program), not a 10% quota as Plaintiffs allege. Second, because the DOT DBE program is not a set-aside program, Plaintiffs' reliance on *Northeastern Florida Chapter of the Associated General Contractors of America v. City of Jacksonville*, 508 U.S. 656 (1993), is misplaced, and Plaintiffs have failed to allege an injury in fact. Finally, Plaintiffs' allegation that the

DOT DBE program is limited only to companies owned by individuals who are presumed to be socially and economically disadvantaged is false. 49 C.F.R. § 26.67(d); 13 C.F.R. §§ 124.103–04. Accordingly, the Court should grant the Motion.

I. **The Infrastructure Act Reauthorizes the DOT DBE Program, Which Prohibits Quotas.**

In their Opposition, Plaintiffs continue to mischaracterize the Infrastructure Act as imposing a "10% race-and-gender quota." Opp'n at 4. This is incorrect. The Infrastructure Act authorizes "the continuation of the disadvantaged business enterprise program." Pub. L. No. 117-58, § 11101(e)(1)(B), 135 Stat. at 448. The DOT DBE program, which has its implementing regulations at 49 C.F.R. part 26, explicitly prohibits state and local contracting entities' use of "quotas for DBEs on DOT-assisted contracts." 49 C.F.R. § 26.43(a). Indeed, the provision calling for the expenditure of "not less than 10 percent" of funds with DBEs of which Plaintiffs complain, *id.* § 26.41(a), is "an aspirational goal at the national level" that "does not authorize or require recipients to set overall or contract goals at the 10 percent level, or any other particular level," *id.* § 26.41(b)–(c).

Plaintiffs similarly mischaracterize the DOT DBE program as analogous to the "race-and-gender-based preferences in the American Rescue Plan Act." Compl. ¶ 5 (citing *Vitolo v. Guzman*, 999 F.3d 353 (6th Cir. 2021)). But in contrast to the American Rescue Plan Act, the DOT DBE program is a decades-old program that calls for goal-setting based on state and local market characteristics, among other facts. The DOT DBE program requires state and local intermediaries to set their own overall goals for

DBE participation by: (1) determining the relative availability of DBEs "ready, willing and able" to participate in DOT-funded projects as compared to all ready, willing and able firms; and (2) examining local conditions to adjust the base figure if necessary. 49 C.F.R. § 26.45. After setting a goal, a recipient "must meet the maximum feasible portion of [its] overall goal by using race-neutral means of facilitating race-neutral DBE participation." *Id*. § 26.51(a). Then, and only if a recipient cannot "project being able to meet [its overall goal] using race-neutral means," it sets contract-specific DBE *subcontracting* goals on projects with *subcontracting* possibilities, *id.* § 26.51(d)–(e), and it cannot be penalized or treated as being in noncompliance for falling short of the established DBE goal, *id*. § 26.47(a). In fact, many recipients use only race-neutral means to achieve their DBE goals. For instance, the Florida Department of Transportation uses only race-neutral means to achieve its DBE participation goal for DOT-funded highway projects.[1] And of Florida's 31 DOT-funded public transit systems, a majority—22 to be exact—use only race-neutral means to achieve their DBE goals. *See* ECF 29-4, McCallum Decl., ¶ 12.

## II. The DOT DBE Program Prohibits Set-Asides Except in Extremely Limited Circumstances.

Plaintiffs' characterization of the Infrastructure Act as authorizing "$37 billion in set asides for women and certain racial groups," Opp'n at 7, is false. "A set-aside is a very specific tool." 64 Fed. Reg. 5096, 5108 (Feb. 2, 1999) (Section-by-Section

---

[1] *See* Florida Department of Transportation Programs and Services, available at https://www.fdot.gov/equalopportunity/programsandservices.shtm ("Ultimately, FDOT believes it can achieve its DBE goal on federally assisted contracts through normal competitive processes.").

3

Analysis of DOT DBE Program Regulations). "A contracting agency sets a contract aside for DBEs if it permits no one but DBEs to compete for the contract." *Id*. The DOT DBE program, however, has never required the use of set-asides. *See id*. Indeed, the federal regulations expressly provide that recipients "may *not* set-aside contracts for DBEs . . . except that, in limited and extreme circumstances, [they] may use set-asides when no other method can be reasonably expected to redress egregious instances of discrimination." 49 C.F.R. § 26.43(b) (emphasis added); *see also* 64 Fed. Reg. at 5108.

The Infrastructure Act does not provide for set-asides beyond the extraordinarily limited circumstances authorized in the DOT DBE program, and there is no evidence that any Infrastructure Act recipient has used, or intends to use, set-asides. This is also not a situation where certain recipients are prioritized in receiving federal funds based on dollars going to DBEs, *see Vitolo*, 999 F.3d at 357 (enjoining use of a limited fund available only to disadvantaged businesses for the first 21 days), or are the only ones eligible to receive funds, *see Wynn v. Vilsack*, 545 F. Supp. 3d 1271, 1295 (M.D. Fla. 2021) (enjoining provision in ARPA that provided debt relief only to disadvantaged farmers). This is a highly regulated program where recipients must clear several race-neutral hurdles before implementing any race-conscious goals.

### III. Plaintiffs Have Not Suffered a Cognizable Injury Under *Northeastern Florida Chapter* or Otherwise Alleged an Injury in Fact.

Plaintiffs rest their standing arguments almost entirely on a misapprehension of *Northeastern Florida Chapter of Associate General Contractors*, but they find no help in this

4

authority. *See* Opp'n at 3–5. In that case, the Supreme Court held that "[t]o establish standing, . . . a party challenging *a set-aside program* . . . need only demonstrate that it is able and ready to bid on contracts and that a discriminatory policy prevents it from doing so on an equal basis." 508 U.S. at 666 (emphasis added).

For many reasons, Plaintiffs' reliance on *Northeastern Florida Chapter* is misplaced. First, the DOT DBE program is not a set-aside program. *See supra* § II; *cf. Ne. Fla. Chapter*, 508 U.S. at 658 (noting that the ordinance "required that 10% of the amount spent on city contracts be set aside each fiscal year" and that projects were "deemed reserved" for minority-owned businesses). Second, the contractor association in *Northeastern Florida Chapter* had "alleged that many of its members regularly bid on and perform construction work for the City of Jacksonville . . . and that they would have bid on designated set aside contracts but for the restrictions imposed by the ordinance." *Ne. Fla. Chapter*, 508 U.S. at 659 (internal quotation marks and alterations omitted). Plaintiffs make no such allegation here—only the conclusory, speculative statement that they are "qualified, willing, and able to apply for contracts" under the Infrastructure Act. Compl. ¶ 35; *see Farquharson v. Citibank, N.A.*, 664 F. App'x. 793, 799–800 (11th Cir. 2016) (rejecting plaintiffs' description of defendants as "debt collectors" as an insufficient "threadbare recital[] of a cause of action's elements") (citations omitted).

Plaintiffs also fail to allege an injury in fact because they have not alleged they ever "submitted an application to" a government contracting project, and were "therefore never considered for [a] public contract." *Thompson Bldg. Wrecking Co. v.*

5

*Augusta, Ga.*, 2010 WL 11613685, at *4 (S.D. Ga. July 26, 2010). Thus, they "cannot establish 'direct exposure to unequal treatment' based upon race." *Id.* (quoting *Wooden v. Bd. Of Regents of Univ. Sys. of Ga.*, 247 F.3d 1262, 1280 (11th Cir. 2001)). Plaintiffs have also failed to even allege they will submit a bid for a state or local project that will receive funding under the Infrastructure Act, much less identify a third-party state or local recipient with the DOT DBE program that would use race- or gender-conscious means to meet participation goals.

**IV.     DBE Certification Is Not Limited to Only Certain Races and Genders.**

Plaintiffs state that Plaintiff Bruckner is not a "'socially and economically disadvantaged individual' because he does not fit into any of the racial and ethnic categories." Opp'n at 7. This is a misunderstanding of the DOT DBE program, which only creates a *rebuttable presumption* concerning social and economic disadvantage for certain minority and female business owners. But all small business owners, regardless of their race, whose personal net worth does not exceed $1.32 million can apply to be a part of the DOT DBE program, including those who are not presumed to be socially disadvantaged. 49 C.F.R. § 26.67(d) & app. E; 13 C.F.R. §§ 124.103–04.

To certify as a DBE, a firm must demonstrate to the recipient that it is a small business owned and controlled by a socially and economically disadvantaged individual. Evidence of social disadvantage includes "[a]t least one objective distinguishing feature that has contributed to social disadvantage, such as race, ethnic origin, gender, disability, long-term residence in an environment isolated from the mainstream of American society, or other similar causes not common to individuals

who are not socially disadvantaged." 49 C.F.R. app. E; 13 C.F.R. §§ 124.103–04. For example, although people with disabilities are not presumptively disadvantaged under the DOT DBE program, the DOT recognizes that "people with disabilities have disproportionately low incomes and high rates of unemployment," and "many individuals with disabilities . . . may be socially and economically disadvantaged." 49 C.F.R. app. E. Consequently, depending on his business size and personal net worth, Bruckner could apply to certify as a DBE. Indeed, five certified DBEs listed in Florida's Unified Certification Program (UCP) DBE Directory are owned by white males.[2]

Dated: November 1, 2022

JOHN E. PUTNAM
  *General Counsel*
PAUL M. GEIER
  *Assistant General Counsel*
  *for Litigation and Enforcement*
PETER J. PLOCKI
  *Deputy Assistant General Counsel*
  *for Litigation and Enforcement*
CHARLES E. ENLOE
  *Senior Trial Attorney*
U.S. Department of Transportation

Respectfully submitted,

KRISTEN CLARKE
Assistant Attorney General
Civil Rights Division

KAREN D. WOODARD
Chief
Employment Litigation Section
Civil Rights Division

/s/ Robert Rich
ANDREW BRANIFF
(IN Bar No. 23430-71)
Deputy Chief
ROBERT RICH
(DC Bar No. 1016908)
YOUNG CHOI
(CA Bar No. 327027)

---

[2] These white male-owned Florida certified DBEs include DAK Resources, Inc.; Engineering Operations, LLC; Quality Control Services, LLC; Spectrum Signs and Graphics, Inc.; and WHG Vending Enterprises, Inc. *See* https://fdotxwp02.dot.state.fl.us/EqualOpportunityOfficeBusinessDirectory/CustomSearch.aspx.

7

Trial Attorneys  
Employment Litigation Section  
Civil Rights Division  
United States Department of Justice  
950 Pennsylvania Ave., N.W.  
Washington, D.C. 20530  
(202) 598-9898  
Robert.Rich@usdoj.gov  

*Counsel for Defendants*

## CERTIFICATE OF SERVICE

I certify that, on November 1, 2022, I electronically filed a copy of the foregoing document with the Clerk of Court via CM/ECF, which will send a notice of electronic filing to all counsel of record.

/s/ Robert Rich  
ROBERT RICH