UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | |
|---|---|
| **CHRISTIAN BRUCKNER**, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>**JOSEPH R. BIDEN, JR.**, *et al.*,<br><br>**Defendants.** | Case No. 8:22-cv-1582-KKM-SPF |

## DEFENDANTS' SUPPLEMENTAL BRIEF

Defendants submit this supplemental briefing describing the administration and implementation process of the U.S. Department of Transportation's Disadvantaged Business Enterprise program (the DOT DBE program[1]) in response to the Court's November 21, 2022 Order, ECF No. 46. Defendants also attach the Declarations of DOT personnel attesting to the goals implemented by recipients.

As explained in detail below, the DOT DBE program is a small business program designed to allow state and local transportation entities to assist socially and economically disadvantaged small business owners to participate on an equal playing field in certain DOT-funded contracts.[2] The DOT DBE program is a multilayered system involving state and local entities that receive DOT funding ("recipients"). These recipients set an annual individualized DBE participation goal based on local

---

[1] 49 C.F.R. § 26.1
[2] *Id.*

market conditions and evidence of past discrimination. Recipients must attempt to meet the localized goal through race- and gender-neutral means, typically in open contracting in which DBE prime and subcontractors participate like any others. If, and only if, a recipient's overall goal cannot be met in this way, the recipient sets contract-specific DBE goals on a subset of project contracts, which are met by requiring prime contractors to submit contract bids that meet the contract goal by using DBE subcontractors or demonstrating good faith efforts have been undertaken to do so.

### Administration and Implementation of the DOT DBE Program

Congress has regularly reauthorized the DOT DBE program for highway and transit projects in surface transportation bills since 1983, most recently in the Infrastructure Investment and Jobs Act (Infrastructure Act).[3] The Act authorizes three principal types of funding to which the DOT DBE program applies. First, the Act authorizes multi-year funding for the Federal-Aid Highway Program (FAHP), which funds state-sponsored highway projects.[4] FAHP funds are apportioned among the states under a statutory formula.[5] Second, the Act authorizes public transit grant

---

[3] Pub. L. No. 117-58, 135 Stat. 429, 448, § 11101(e) (Nov. 15, 2021) (stating that "the continuing barriers described in subparagraph (A) merit the continuation of the disadvantaged business enterprise program"). Previous iterations of the same program have been found constitutional on their face under strict scrutiny. *See Midwest Fence Corp. v. Dep't of Transp.*, 840 F.3d 932, 941, 935–36 (7th Cir. 2016); *W. States Paving Co. v. Wash. State Dep't of Transp.*, 407 F.3d 983, 995 (9th Cir. 2005); *Sherbrooke Turf, Inc. v. Minn. Dep't of Transp.*, 345 F.3d 964, 967–68 (8th Cir. 2003); *Adarand Constructors, Inc. v. Slater*, 228 F.3d 1147, 1155 (10th Cir. 2000).

[4] 135 Stat. at 443, § 11101(a). The Infrastructure Act authorizes a total of $273,150,000,000 for apportionment to states for fiscal years 2022 through 2026.

[5] *See* Dep't of Transp., Notice 4510.858 (Dec. 14, 2021), available at https://www.fhwa.dot.gov/legsregs/directives/notices/n4510858/n4510858_t1.cfm; *see also* 135 Stat. at 443, § 11101(a); 23 U.S.C. § 104.

programs that provide funds to state departments of transportation and state and local public transit agencies, to support (among other things) the operations, maintenance, and construction of the nation's public transit systems.[6] Like the FAHP funds, these funds are primarily distributed pursuant to statutorily-set formulas.[7] Third, the Infrastructure Act authorizes funding for discretionary programs under which the Federal Highway Administration (FHWA) or Federal Transit Administration (FTA) selects projects for funding based on applications received.[8] DOT DBE participation levels or goals are not factors in determining funding for discretionary programs.[9] Although Division A of the Infrastructure Act also authorizes title 23 funds that are awarded by FHWA to federal agencies, the procurements by these agencies with title 23 funds are not subject to the DBE program;[10] instead, the program applies only to recipients of DOT financial assistance.[11] While there are similar requirements that apply to direct federal procurement, those requirements are authorized by a separate statute that is not the subject of this litigation, and any goals set by federal agencies in administering such procurement are not set pursuant to the DBE program.[12]

---

[6] *See* 135 Stat. at 912, § 30017(a). Section 30017(a) authorizes a total of $69,900,000,000 for apportionment in fiscal years 2022 through 2026.

[7] *See* https://www.transit.dot.gov/funding/apportionments/current-apportionments; *see* 135 Stat. at 912, § 30017; 49 U.S.C. § 5336.

[8] *See, e.g.*, 135 Stat. at 445, 913-14, §§ 11101(b), 30017(a)(2)(N).

[9] *See supra* notes 5 and 7.

[10] *See* 135 Stat. at 449, § 11101(e)(3) (providing that DBE program's 10% aspirational national goal applies to covered funds "[e]xcept to the extent that the Secretary determines otherwise"); *id.* § 11101(e)(1)(E) (stating that Congress had identified a "compelling need for the *continuation* of the disadvantaged business enterprise program") (emphasis added).

[11] *See, e.g.*, 49 C.F.R. §§ 26.1, 26.3(d), 26.5, 26.21.

[12] Small Business Act, § 8(d), 15 U.S.C. § 637(d).

Federal regulations identify eight DOT DBE program objectives related to ensuring non-discrimination in the surface transportation industry.[13] In furtherance of these objectives, the DOT DBE program establishes a national aspirational goal of spending at least 10% of authorized funds[14] for specified federally-funded highway and transit programs "through small business concerns owned and controlled by socially and economically disadvantaged individuals."[15] Notwithstanding the national aspirational goal, DOT "does not authorize or require recipients to set overall or contract goals at the 10 percent level, or any other particular level, or to take any special administrative steps if their goals are above or below 10 percent."[16] Instead, each recipient's overall goal must be "based on demonstrable evidence of the availability of ready, willing and able DBEs relative to all businesses ready, willing and able to participate on" such contracts.[17] Contract goals are set as necessary to enable a recipient to meet its overall goal to the extent it is unable to do so through race- and gender-neutral means.[18]

To certify as a DBE, a firm must be a small business[19] that is owned and controlled by socially and economically disadvantaged individuals.[20] A "social and

---

[13] 49 C.F.R. § 26.1.
[14] *Id.* § 26.41(b).
[15] 135 Stat. at 449, § 11101(e)(3); 15 U.S.C. § 637(a)(6)(A); 13 C.F.R. § 124.104.
[16] 49 C.F.R. § 26.41(c).
[17] *Id*. §§ 26.45(a)–(b).
[18] *Id*. § 26.51(d).
[19] A firm is not an eligible DBE for the purposes of FHWA and FTA-assisted work in any year where it has had average annual gross receipts over the firm's previous three fiscal years in excess of $28.48 million (effective March 1, 2022). *See* 49 C.F.R. § 25.65(b) and https://www.transportation.gov/DBEsizestandards.
[20] 49 C.F.R. §§ 26.69, 26.71.

4

economically disadvantaged individual" is a person who "has been subjected to racial or ethnic prejudice or cultural bias within American society because of his or her identity as a member[] of [a] group[] and without regard to his or her individual qualities."[21] Certain racial and ethnic minorities and women are presumed to be socially and economically disadvantaged, but they still must certify their disadvantaged status and provide economic evidence.[22] This presumption is rebuttable if the business owner has a personal net worth in excess of $1.32 million or is able to accumulate substantial wealth.[23] And firms "owned and controlled by individuals who are not presumed to be socially and economically disadvantaged . . . may apply for DBE certification" if the individual's personal net worth does not exceed $1.32 million.[24] Defendants now address the Court's additional briefing requests as listed in its November 21, 2022 Order, ECF No. 46.

### a. How the DOT Calculates the Recipients' DBE Goals and Assesses Whether the Recipients Are Fulfilling Their DBE Goals

DOT does not calculate recipients' DBE goals; rather, on a triennial basis recipients "must set an overall goal for DBE participation in [their] DOT-assisted contracts."[25] To set the goal, recipients must conduct analyses to determine the level of DBE participation, in terms of dollars spent, that would be expected in their markets

---

[21] *Id.* § 26.5.
[22] *Id.* § 26.67(a).
[23] *Id.* § 26.67(b).
[24] *Id.* § 26.67(d) & app. E;.
[25] *Id.* § 26.45(a).

absent discrimination.[26] Each recipient selects its own goal-setting method using a two-step process that starts with determining the availability of DBEs in the marketplace willing and able to bid on contracts and adjusting that availability number to best reflect local market conditions.[27] Any adjustment to the goal "to account for the continuing effects of past discrimination . . . or the effects of an ongoing DBE program . . . must be based on demonstrable evidence that is logically and directly related to the effect for which the adjustment is sought."[28] The recipient selects an aspirational annual goal that is represented as a percentage of total federal transportation dollars spent by the recipient.[29] DOT's assessment of whether recipients are fulfilling their DBE goals is limited to whether recipients have an approved DBE program and are implementing it in good faith.[30] A recipient whose DBE participation falls short of its overall goal submits to DOT an analysis of the shortfall and measures it intends to apply to improve its efforts.[31] Any recipient may apply for a waiver from specific provisions of the DOT DBE program including, but not limited to, "provisions regarding administrative requirements, overall goals, contract goals or good faith efforts."[32]

### b. Whether a Recipient's DBE Participation Goal Influences the Amount of Federal Funds Awarded Under the Infrastructure Act

---

[26] *Id.* § 26.45(b).
[27] *Id.* § 26.45(c)–(d).
[28] *Id.* §§ 26.45(c)(3) & (d)(1)–(3). This evidence frequently comes from "valid and applicable" disparity studies of the local marketplace. An example of a 2020 recipient study for Virginia DOT is available at 2020-Commonwealth-of-Virginia-Disparity-Study-Final.pdf (last visited December 2, 2022).
[29] *Id.* § 26.45(e).
[30] *Id.* § 26.47(b).
[31] *Id.* § 26.47(c).
[32] *Id.* § 26.15(b). Decisions on waiver requests are made by the DOT Secretary. *Id.* § 26.15(a).

A recipient's DBE participation goal does not influence the amount of federal funds awarded under the Infrastructure Act. As explained above, FHWA and FTA apportion funds to each recipient based on statutory formulas; these formulas do not take DBE goals into account.[33] FHWA and FTA discretionary funding is awarded according to specific criteria that do not include DBE goals.[34]

### c. The Race-Neutral Means Used by Recipients that Employ Only Race-Neutral Means to Award Contracts

Race or gender-neutral means are measures used to increase opportunities for all small businesses, not just DBEs, and do not involve setting specific DBE goals on individual contracts. A recipient must meet the maximum feasible portion of its overall goal by using race-neutral means of facilitating race-neutral DBE participation.[35] This includes open contracting because race-neutral DBE participation includes any time a DBE wins a prime contract through customary competitive procurement procedures or is awarded a subcontract on a prime contract that does not carry a DBE contract goal.[36] Examples of race-neutral steps a recipient might take to facilitate DBE participation include activities that assist all small businesses, including DBEs; administering supportive services and trainings to small businesses; waiving bonding requirements for small businesses; and organizing "meet and greet" events to provide

---

[33] *See supra* notes 5 and 7.
[34] *See, e.g.*, 23 U.S.C. § 117 (Nationally Significant Multimodal Freight and Highway Projects Program); *id.* § 124 (Bridge Investment Program); 49 U.S.C. § 5339(c) (Low- or No-Emission Bus Grants Program).
[35] 49 C.F.R. § 26.51(a).
[36] *Id.*

opportunities for small businesses to meet prime contractors and market their firms' capabilities.[37] If DOT funding recipients cannot meet their DBE goal through exclusively race-neutral means, individual DBE goals on contracts are set by recipients.[38] Recipients "are not required to set a contract goal on every DOT-assisted contract" and "may use contract goals only on those DOT-assisted contracts that have subcontracting possibilities."[39] The goal for a specific contract may be higher or lower than the percentage level of the recipient's overall goal, "depending on such factors as the type of work involved, the location of the work, and the availability of DBEs for the work of the particular contract."[40] For the period of time covered by the DOT fund recipient's overall goal, it must set contract goals so that "they will cumulatively result in meeting any portion of [its] overall goal [it] do[es] not project being able to meet through the use of race-neutral means."[41]

### d. Whether Recipients and Prime Contractors Are Aware of a Bidder's DBE Status When Determining Whether to Award a Contract in a Jurisdiction that Exclusively Uses Race-Neutral Means

Recipients and prime contractors may be made aware of a bidder's DBE's status through recipient-maintained DBE directories,[42] regardless of whether the recipient's program is wholly race-neutral or uses both race- and gender-neutral and race- and gender-conscious means to meet the overall goal.

---

[37] *See id.* § 26.51(b) (listing examples of race-neutral means to facilitate DBE participation).
[38] *Id.* § 26.51(e)
[39] *Id.* § 26.51(e)(1)–(2).
[40] *Id.* § 26.51(e)(2).
[41] *Id.*
[42] *Id.* § 26.81(g).

8

### e. Whether a Subcontractor Knows Before Bidding if the Recipient or Prime Contractor Is Employing Race- and Gender-Conscious Means or Race-Neutral Means to Award Subcontracts

Subcontractors know whether a contract includes a race- and gender-conscious DBE goal because this language is included in the contract announcement. Either way, all subcontractors, including DBEs, provide quotes to multiple prime contractors that identify the costs for their services in hopes of being selected as a subcontractor. Then, prime contractors submit bids to the recipient, and recipients choose a winning bid based on typical contracting principles (such as the lowest bid or the bid providing the best value). If the advertised contract includes a race- and gender-conscious DBE goal, a recipient may award it only to a prime contractor that has met the goal by hiring DBE subcontractors or shown that they have been unable to do so despite using good faith efforts.[43] A prime contractor's inability to meet the goal by hiring DBE subcontractors is not fatal to its eligibility for the contract award.[44] In this instance, a prime contractor submits evidence of efforts used to hire DBE subcontractors including "advertising to DBEs, providing interested DBEs with adequate information, and not rejecting DBEs without sound reasons."[45] The recipient reviews the documented efforts, and if it deems them sufficient, then the prime contractor may not be denied the award on the grounds of its failure to meet the DBE contract goal.[46]

---

[43] *Id.* § 26.53 & app. A.
[44] *Id.*
[45] *Id.*
[46] *Id.*

### f. The Certification Process for a Business to Acquire DBE Status, Including Which Entities Certify DBEs and Whether a Subcontractor Must Apply for DBE Status in Each Locality Where It Intends to Bid

Federal regulations require each state to establish a Unified Certification Program (UCP).[47] A UCP makes all DBE certification decisions on behalf of all DOT fund recipients in the state with respect to participation in the DOT DBE Program.[48] Certification decisions by a UCP are binding on all recipients within the state.[49] A UCP must maintain a unified DBE directory of all firms certified in the state.[50] The DOT approved Florida's UCP in 2004, and there are currently 49 DOT fund recipients participating in Florida's UCP.[51]

Federal regulations also require all firms seeking DBE certification to complete a Uniform Certification Application.[52] First-time applicants must submit the application and related materials to a UCP certifying member in their respective home state and participate in an on-site interview conducted by that agency.[53] In determining whether to certify a firm as eligible to participate as a DBE, a UCP certifying member must apply the certification standards as delineated in the regulations.[54]

Dated: December 2, 2022                                         Respectfully submitted,

JOHN E. PUTNAM                                                  KRISTEN CLARKE

---

[47] *Id*. § 26.81(a).
[48] *Id*. § 26.81(b).
[49] *Id*. § 26.81(b)(1).
[50] *Id*. § 26.81(g).
[51] Florida Department of Transportation, Unified Certification Program (UCP) Compliance Review, at 9 (May 2019), *see* https://www.transit.dot.gov/sites/fta.dot.gov/files/docs/regulations-and-guidance/civil-rights-ada/132771/fdot-final-dbe-ucp-review-report-2019.pdf.
[52] *See id.* § 26.83(c)(2) & app. F.
[53] *See id.* § 26.83(c)(1) & app. F.
[54] *Id*. § 26.61(a); *see also supra* notes 20–24 (discussing DBE certification standards).

| | |
|---|---|
| *General Counsel* <br> PAUL M. GEIER <br>   *Assistant General Counsel* <br>    *for Litigation and Enforcement* <br> PETER J. PLOCKI <br>   *Deputy Assistant General Counsel* <br>    *for Litigation and Enforcement* <br> CHARLES E. ENLOE <br>   *Senior Trial Attorney* <br> U.S. Department of Transportation | Assistant Attorney General <br> Civil Rights Division <br><br> KAREN D. WOODARD <br> Chief <br> Employment Litigation Section <br> Civil Rights Division <br><br> /s/ Robert Rich <br> ANDREW BRANIFF <br> (IN Bar No. 23430-71) <br> Deputy Chief <br> ROBERT RICH <br> (DC Bar No. 1016908) <br> YOUNG CHOI <br> (CA Bar No. 327027) <br> Trial Attorneys <br> Employment Litigation Section <br> Civil Rights Division <br> United States Department of Justice <br> 950 Pennsylvania Ave., N.W. <br> Washington, D.C. 20530 <br> (202) 598-9898 <br> Robert.Rich@usdoj.gov <br><br> *Counsel for Defendants* |

11

## **CERTIFICATE OF SERVICE**

    I certify that, on December 2, 2022, I electronically filed a copy of the foregoing document with the Clerk of Court via CM/ECF, which will send a notice of electronic filing to all counsel of record.

                                          /s/ Robert Rich
                                          ROBERT RICH